Welcome to the U. S. Court of Appeal for the Fifth Circuit. We have four cases to be argued this afternoon. You're entitled to use your allotted time, but if you want to give some back, we appreciate it. We'll call the first case for today, which is Alexis v. Barr. Good afternoon, Your Honors. May it please the Court. 17 carbons, 21 hydrogen atoms, or nitrogen oxide. Coke, blow, dust, snow, crack. This is a case about cocaine. This is also a case that pushes the boundaries and exposes the limits of the realistic probability test as applied to facially overbroad statutes, and particularly the strict application of that test announced by this Court in Castillo Rivera. Generic cocaine, Title 21, Section 802 of the U. S. Code, is defined more narrowly than cocaine defined under Texas law. That's Texas Health and Safety Code 481-102-D3. As a result, all species of generic cocaine are still cocaine under state law, but not all species of cocaine defined under state law match the generic definition. Before we discuss the precise nature of these distinctions, a bit of history is required. In the endeavor of defining controlled substances in order to prohibit their possession and distribution, state legislators and illicit drug makers continuously race to outwit one another. Creative designer drug makers concoct variations of prohibited drugs by altering or modifying slightly the molecular structure of those left with two choices. They can either list these additional variations as substances themselves or they can define the drug under state law more broadly in order to encompass these variations and prohibit their possession. The state of Texas chose the latter with regard to cocaine. The reason that Texas's definition of cocaine is broader than the generic definition under federal law is precisely to prevent such designer drugs. The state specifically includes an additional isomer of cocaine, that is, position isomers that are not included under federal law. Federal law defines cocaine as to prohibit cocaine, its salts, its geometric and optical isomers and their salts, whereas Texas defines cocaine to include cocaine, its salts, its optical, geometric and position isomers and their salts. An isomer is a substance that shares the same chemical formula and the same molecular weight but has some sort of alteration in the way the molecule looks or is shaped. An optical isomer is an isomer in which the molecular arrangement is a mirror image of the original where you end up with a left-sided molecule or a right-sided molecule. A geometric isomer is an isomer in which one part or branch of the molecule is flipped such that it either is opposed to or aligns with the original. Those are the two types of isomers included in the federal definition of cocaine. Texas adds position isomers. Position isomers are isomers in which the structure is changed but the components, the recipe for the formula remains the same. For example, on a hexagonal shaped benzene ring, you can have the first position, an item that is attached to that first position of the ring switch to the second position or the third position and that would be an example of a position isomer. We know that position isomers of cocaine exist. In addition to the example provided of scopolamine, we submitted a 28J letter that adds alpha cocaine which is a position isomer of cocaine and has been used in research, has been used illicitly in the United States. Because we know that the state specifically under the black letter of the law prohibits the possession of position isomers of cocaine and treats it as a subspecies of cocaine. We know that the definition, the state definition is over broad to the federal definition. It is not a categorical match. Then we turn to the question of whether or not the definition is divisible. We know that the state does not treat these different species of cocaine as separate crimes and we know this because of Texas case law. In Evansville State, the Texas courts upheld a conviction in which a defendant possessed different species of cocaine. He possessed crack cocaine. He also possessed cocaine hydrochloride which is commonly known as powdered cocaine. Cocaine hydrochloride is not cocaine. It is a salt of cocaine and the state was able to aggregate these various species of cocaine, add the weight of salt of cocaine to the weight of cocaine in its regular form. In order to determine the appropriate penalty range, the state would not have been permitted to do this if these were separate crimes. You couldn't for example aggregate the weight of heroin to the weight of cocaine in order to come up with the appropriate penalty range because they are separate crimes. Because the state routinely treats and does not distinguish between cocaine hydrochloride which is a salt of cocaine and cocaine in its pure form, we know that they treat each of these subspecies of cocaine the same. These are manners and means. They are not separate crimes or elements. The cases on which the respondent rely are taken out of context. Wilson, Chalen, Pendergraf do not stand for the proposition that the government purports to present. Wilson, Chalen, and Pendergraf are all dealing with a situation not in which an isomer of a substance has to be plead and proven. They are dealing in situations where the state has chosen to charge a different name for a substance that was not in the list itself. For example, Wilson, Chalen deal with a substance Fentermin. Fentermin was a prescription drug. It was a drug that was specifically listed under Texas law under the Dangerous Drug Act. But for some reason, the Texas legislature failed to add it to a penalty group. Because it failed to add the substance to a penalty group, which had previously been a misdemeanor, the state began to prosecute it as a first-degree felony under Penalty Group 1 as an isomer of methamphetamine. Because of this, the Texas courts in these cases said, as far as notice goes, if you're going to allege that you're going to use a drug, you have to take these additional steps. You have to describe how it relates to what is listed on the list, and you've got to prove that. So, for example, Wilson discusses another case in which the state alleged a defendant possessed Demerol. Demerol is a trade name for the drug Mepiridine. Mepiridine is the substance that's listed both in the federal and state lists. Demerol is not listed. Demerol is just another name for Mepiridine. But the state, if you're going to say you possess Demerol, you've got to show how Demerol, first of all you've got to show, so you've got to say Demerol is Mepiridine, but then you also have to prove that Demerol is Mepiridine. It has nothing to do with whether the jury has to agree that the substance was Mepiridine. By the same token, Phentermine happens to be an isomer of methamphetamine. The fact that the state required the prosecutors to identify methamphetamine, or its isomer, and prove that had nothing to do with whether the jury had to unanimously agree that the substance was an isomer or one of the two isomers covered under that statute. Quick question. As I read our decision, our en banc decision in Castillo-Rivera, this is my reading. As I read it, you must identify a Texas case where the defendant was specifically convicted, convicted specifically, based on the state's positional isomer language. That is on grounds not covered by federal law, and do you dispute that reading of Castillo-Rivera? No, Judge Willett, we do not dispute that reading in Castillo-Rivera. In fact, what we're doing here is explaining how, in a situation like Alexis's, in a situation in which a singular substance, not just one of a list is overbroad, we're talking about a single substance that's overbroad. You agree you can't meet the realistic probability burden without identifying such a case where the defendant was specifically convicted based on the state's positional isomer language? We would agree that the language in Castillo-Rivera would seem to suggest that only in the situation of having a case in which that occurred, would you meet that test. However, we would ask the court to consider the dissent in that case, and I believe that the dissent correctly identifies the limitations. But it's a dissent. We understand that. Versus an en banc majority. We understand that we're more than one way to satisfy the realistic probability test where you don't necessarily have to show a case. If you're in a situation where a case cannot exist. Haven't you cited to us some cases where Texas aggregated the isomers? Yes, not with isomers. What we have found is salts of cocaine. Salts of cocaine are included in the definition of cocaine and so are isomers. The problem is that Texas, under the definition of cocaine, the state of Texas has no incentive to test for isomers. It's expensive. Gas chromatography is expensive. It's a burdensome process. And if these isomers are all included, there is no reason to test. All you're going to test for is the chemical formula. And that chemical formula is the same whether it's a salt, a position isomer, a geometric isomer, or an optical isomer. It's going to stay the same. C17, H21, NO4. That's all that matters for the state. That's all that matters for the defendant. The defendant has no incentive to identify or dispute what isomer they possessed. And because of that, we end up in the situation that the dissent universe of appellate law, we have a body of appellate cases with regard to cocaine because there's no incentive for a case to exist that's going to discuss an isomer or one of these subspecies because they're all prescribed, they're all prohibited. And because of that, the relevant body of case law with regard to cocaine in the state of Texas does not accurately reflect the manner that the drug is prosecuted. With regard to the realistic probability test, the whole purpose of the realistic probability test as announced in Duenas-Alvarez was to avoid the situation where you're having to rely on legal imagination rather than a situation that we're in now, where the black letter of the law shows the state's intent to prosecute, and it shows that the specific isomer was thought of, it was in the mind of the legislators, and it's present in the statute. When you're applying this realistic probability test application, the application that was also the BIA's 2019 decision, I see that my time is almost up and I'm going to reserve the remainder of my time for my colleague. Thank you. Mr. Green will have five minutes on rebuttal. Is that right? Okay. Okay. You may go ahead. May it please the court, Mari Luchter for the respondent. Ultimately, this case comes down to whether the petitioner has established that the state of Texas prosecutes individuals for non-generic cocaine offenses to establish the necessary realistic probability. And the answer is he has not shown that. First, this court should conclude that the petitioner's offense is a non-generic substance offense. First, because the existence of monoxetamorphine does not make the statute categorically overbroad. And second, because he has failed to establish that the state of Texas actually prosecutes individuals for non-generic offenses, including non-generic cocaine offenses. First, although the agency identified monoxetamorphine as making the statute of conviction categorically overbroad, monoxetamorphine is actually included in federal schedules, specifically under Schedule II as morphine derivative. And petitioner here has failed to establish the realistic probability test as this court stated in Garcia Rivera and Vasquez. He has failed to show that the state of Texas actually prosecutes individuals for non-generic cocaine offenses. As the court in Vasquez stated, the realistic probability test, as noted in Garcia Rivera, applies in immigration cases involving controlled substances, and this is the case here. Indeed, as Vasquez stated, an immigrant has to point to an actual state case applying the state statute in a non-generic manner, even where the state statute may plausibly interpret it as broader in its space. And petitioner has failed to do so here. You don't contest that it's not broader. Do you contest that the Texas definition is broader? I do not contest that the Texas definition of cocaine is broader. Indeed, the Texas definition includes on its face position isomers, and the federal schedules explicitly do not include position isomers in cocaine. Yes, that's correct. First here, petitioner has failed to argue, let alone establish that in his own case, the state of Texas applied the statute in a non-generic manner. He also has not pointed to one state case, as this court in Garcia Rivera and Vasquez require to show that the state of Texas actually prosecutes individuals for non-generic cocaine offenses. And the government has not found any cases indicating as such. Accordingly, because petitioner... But we have cases where they just take the aggregate weight of a cocaine without specifying what type of cocaine it is. Aren't there cases like that? Petitioner has cited to some cases discussing crack cocaine and cocaine as powder cocaine. He's found cases discussing powder cocaine, crack cocaine, and cocaine based as crack cocaine. He has not pointed to one state case actually discussing in the same manner positional isomers of cocaine. But what I'm asking is, if they get to just take the aggregate weight of the cocaine without specifying what type of cocaine it is, then how can we say they're not prosecuting them for positional isomers? As this court in Vasquez stated, under the realistic probability test, he has to actually point to an actual state case applying the state statute in a non-generic manner, and he has failed to do so. Vasquez stated that the realistic probability test qualifies a categorical approach, meaning that he has to show an actual state case applying the state statute in a non-generic manner. That statement in Castile, is that meant to apply to a situation like this, where the state of Texas lumps everything, all kind of cocaine, and they don't specify. So how are you ever going to tell whether Texas is prosecuting? In other words, Texas would have to go read the federal statute and break down their law and specify each isomer that's included in every case. That wasn't intended by Castile, was it? Vasquez specifically applied Castile-Rivera immigration cases involving controlled substances, and noted that even if the state statute could be plausibly interpreted as broader in its face, as is the case here, a non-immigrant has to point to, I'm sorry, an alien has to point to an actual state case applying the state statute in a non-generic manner, and he has failed to point to any cases. He has pointed to cases discussing salts of cocaine, powder cocaine, crack cocaine. He has not pointed to one state case actually discussing in a similar manner positional isomers of cocaine, and the government has not been able to find it. Why would there be a discussion under Texas law? Because Texas doesn't specify. It doesn't exclude any kind of cocaine. Why shouldn't the assumption be the other way, that Texas is prosecuting all kinds of cocaine, all kinds of isomers in every case? Because it hasn't specified anything different. This court, when applying Castile-Rivera and Vasquez, did not make any such exception to the realistic probability test. Indeed, in Castile-Rivera, the court itself stated that there is no exception to the actual case requirement when a statute is broadly interpreted, as is the case here. And the petitioner has not pointed to any cases showing that Texas actually prosecutes individuals for possession of positional isomers of cocaine, which is required to do under this court's case law in Castile-Rivera and Vasquez. Indeed, to hold otherwise would mean that every prosecution in Texas involving cocaine under Penalty Group 1 would have no immigration consequences. This is not what the Congress would have intended. This is discussed in the recent court decision as well, in reasoning why it's necessary to have the realistic probability test in immigration cases. Indeed, the court discusses that it's important to have the realistic probability test, because otherwise the categorical approach would eliminate— I guess I got the same problem with this. You got the Texas practice on criminal law, which talks about an indictment and what an indictment has to include. And it says an indictment need only allege the name of the substance. All it has to do is say cocaine. And there is the indictment, and there is the conviction. There's just no requirement of any specificity. So for you to argue that we lack a case where there's been a specific determination about position isomers, we can anticipate that we will always lack those cases, because Texas has no incentive to be specific about the type of cocaine. So I don't know where they'd ever get a case, but I don't know what would ever stop a prosecutor from getting an indictment based on cocaine, even without ever having to specify the type of indictment to cover it, as long as it was cocaine. If that was the derivative, whatever the substance, that's all you got to say in an indictment, and it's covered. So I don't know how anyone would ever be able to cite to a specific case. That's the problem. This court in Castillo—an en banc decision in Castillo-Rivera indeed stated that there is no exception to the actual case requirement when a statute is interpreted broadly. And Alaska's court applied that interpretation in an immigration case involving controlled substances. And some of the case law in Texas indeed indicates that even if they would prosecute someone for non-specified or non-listed substance that's an isomer of a controlled substance, they would actually have to list that and prove that beyond a reasonable doubt. And the petitioner has not pointed to any state cases discussing positional isomers, let alone showing that the state of Texas actually prosecutes for positional isomers of cocaine. And again, as the board stated in its new decision, in its recent decision, it discussed that it's necessary to apply the realistic probability test in this manner because it would mean—otherwise it would mean that many state drug crimes would not have immigration consequences, which is not what the Congress intended when it made drug crimes removable for the fair application of immigration laws throughout the states and their state drug crimes. Indeed, if the court were to follow the logic of a petitioner, that would mean that no cocaine offense in the state of Texas under Penalty Group 1, whether it be possession or drug trafficking crimes, would not have any immigration consequences. And that is And again, as I stated, there is no exception to the realistic—there is no exception to the actual case requirement as stated in Casillo-Rivera. And at best, petitioner's argument showed that there is mere theoretical possibility, not a realistic probability, that the state of Texas actually would prosecute someone for non-generic cocaine offenses. And that does not establish the necessary realistic probability in this case. And shortly, just to briefly touch upon the possibility of the court reaching the modified categorical approach, even on the modified categorical approach, it's clear that the state of conviction is divisible, which is something that petitioner does not challenge on appeal, that the type of drug itself is an element of the offense. And under the modified categorical approach, it's clear that petitioner was convicted of possession of cocaine. This is what the indictment states, and he pleaded guilty to that. So it's clear that he was convicted of a federally controlled substance. And again, finally, because petitioner's convictions are for convictions, are controlled substance offenses, this Court lacks jurisdiction to review the agency's factual findings regarding his claims for asylum and holding a cat. And because he has failed to raise any arguments in his opening brief regarding legal issues or constitutional issues, the Court has no—the Court should just—the Court should dismiss in part his petition for review as to those claims. To emphasize, the Court should conclude under the categorical—the Court should conclude that petitioner's conviction for possession of cocaine is a categorically controlled substance offense, as this—because, as this Court has stated in Garcia-Rivera and Vasquez, he has to meet the realistic probability that the state has failed to do so because it has failed to point to one state case applying the state statute in a non-generic manner, in this case, and he has failed to meet the test as a result. Unless the Court has any further questions for me, I would briefly conclude. Thank you. For these reasons, and for the reasons stated in Respondent's brief, the Court should dismiss in part and deny in remaining part this petition for review. Thank you very much. Thank you. Mr. Green, you have five minutes for rebuttal. Your Honors, I want to talk about Castillo-Rivera. Judge Willett, we recognize that Castillo-Rivera is an en banc decision and it is binding. We, however, do recognize that this is a very contentious decision. It was an 8-7 split en banc on the question of whether we need to apply the realistic probability test to a facially overbroad statute. And by our count, we have five circuits agreeing with the dissent in Castillo-Rivera and no circuits going the other way right now. But nonetheless, we're bound by it. We are bound by it. No, I completely agree. It's a blowout unanimous decision or a razor-thin decision. I agree. I agree with that. I'm not contesting. I'm not contesting that we're not bound by it. I'm not pretending that we're not. But I'd like to go out on a limb and suggest some flexibility in the realistic probability test and maybe we can focus on the goal rather than the method. The method of pointing to an actual state case applying a statute in a non-generic manner is flawed. And particularly as it applies to this case, it's flawed. We already discussed, Judge Dennis, your citation to the Fourth Circuit en banc case in your dissent in Castillo-Rivera that discusses a skewed universe of cases. I won't read that quote. But I will read what Justice Higginson said at the end of his concurrence as to why the realistic probability test is not adequate to the task of sussing out the actual realistic probability of how Texas would apply its statutes. He says, with most criminal prosecutions ending in plea agreements and putative charges driving plea negotiations, the conduct states define as criminal may not be expressed in appellate-level decisions and the evidence required to satisfy the majority's rule may thus be unavailable. So I want to suggest maybe how we can get to realistic probability when looking for specific prosecutions doesn't help. Do you agree that theoretical possibility doesn't get to realistic probability? I'm not sure I understand the question. There's a distinction, you can see, between theoretical possibility and realistic probability. Can you distinguish this case from Castillo? Is the ability to focus on the reasonable possibility more appropriate in Castillo than it is here? I think it is more appropriate in Castillo than it is here. Because for the reasons Judge Graves pointed out, looking for cases is not going to establish whether there's a realistic probability of what Texas does with its statutes because no defendant is ever going to have an incentive in Texas to say, well, no, Your Honor, it wasn't crack, it was powdered cocaine. Or, no, Your Honor, it wasn't an isomer of cocaine, it was actually coca leaves or any of the other things that are included within the broad definition of cocaine. They would never have an incentive to do that and so a case like that is never going to rise up on appeal and we're not going to find it. But I do want to suggest two ways that maybe we can establish the realistic probability that are maybe a little bit different. So, for example, in Lorenzo, this is a Ninth Circuit case. It was a case in which the Ninth Circuit determined that the California statutes were overbroad because they criminalized a geometric isomer of methamphetamine. And the Ninth Circuit released this decision as a precedential decision and then it later withdrew the decision and it released the same decision coming to the same conclusion as a non-precedential decision. And the reason that the Ninth Circuit did it was because they weren't sure whether a geometric isomer of methamphetamine actually exists and they wanted to leave that open for future litigation. So maybe one way that we can look at realistic probability in this case is to ask, do positional isomers of cocaine actually exist? Well, they do. We know that they exist. So that's one way. Another way is we can ask whether there is other indirect evidence that the courts prosecute crimes in a certain way. For example, in this case, the question is, do Texas trial courts really treat different kinds of cocaine as different crimes? I'm out of time and we've already discussed the aggregation of the different substances. Just one thing really quickly. Opposing counsel said none of those cases mentioned positional isomers, but there's no reason why positional isomers would be treated different from the pure cocaine, the powdered cocaine, the salt of cocaine. There's no reason they would be treated different. Thank you, Your Honor.